UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH JACKSON, LINDA GONNELLA, and JAMES BINKOWSKI, on behalf of themselves and the class members described below<br><br>  Plaintiffs<br><br>v.<br><br>PAYDAY FINANCIAL, LLC, d/b/a Lakota Cash, Big Sky Cash, and Big $ky Cash; WESTERN SKY FINANCIAL, LLC, d/b/a Western Sky Funding, Western Sky, and Westernsky.com; GREAT SKY FINANCE, LLC, d/b/a Great Sky Cash, Great $ky Cash, and Gsky; RED STONE FINANCIAL, LLC, d/b/a Red Stone Cash; MANAGEMENT SYSTEMS, LLC, d/b/a Gsky; 24-7 CASH DIRECT, LLC; RED RIVER VENTURES, LLC; HIGH COUNTRY VENTURES, LLC; FINANCIAL SOLUTIONS, LLC; MARTIN A. ("Butch") WEBB; and DOES 1-5, d/b/a WS Funding LLC and under other names,<br><br>  Defendants. | Case Number: 11−cv−09288<br><br>Judge Charles P. Kocoras<br>Magistrate Judge Jeffrey Cole |

**MOTION TO DISMISS OR STAY THE CASE**

Defendants Payday Financial, LLC, Western Sky Financial, LLC, Great Sky Finance, LLC, Red Stone Financial, LLC, Management Systems, LLC, 24-7 Cash Direct, LLC, Red River Ventures, LLC, High Country Ventures, LLC, Financial Solutions, LLC, and Martin A. Webb (collectively, the "Payday Defendants"), through their undersigned attorneys, submit the

following Motion To Dismiss Or Stay The Case pursuant to the doctrine of tribal exhaustion, Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), and 9 U.S.C. § 3.

## I.     PRELIMINARY STATEMENT

Plaintiffs bring this case in an effort to challenge the terms of their loan agreements with Defendant Western Sky.  However, the terms themselves – which were known to Plaintiffs at the time the loans were made – preclude this action.  The loan Agreements' choice-of-law, forum-selection, arbitration, and class-action-waiver clauses prevent the Plaintiffs from pursuing their claims in this Court.  Although dismissal is entirely appropriate, the Payday Defendants are equally amenable to a stay of this matter until arbitration can be completed pursuant to the Plaintiffs' loan agreements.

## II.     BRIEF STATEMENT OF FACTS

The Payday Defendants are engaged in the business of internet lending.  According to the Amended Complaint, Plaintiffs obtained loans from Defendant Western Sky sometime in 2010 or 2011.  (*See* Am. Compl. – Class Action ("Am. Compl.") ¶¶ 48, 49, 50.)  The details of these loans can be gleaned from the documents Plaintiffs attached to the Amended Complaint.  (*See* Am. Compl., Exs. A, B, Z.)[1]  Importantly for purposes of the present Motion, the Loan Agreement contains choice-of-law, forum-selection, class-action-waiver, and mandatory arbitration provisions, each of which precludes the perpetuation of the case in this Court.  (*See* Loan Agreement at 2, 4-6.)

---

[1]     The Plaintiffs entered into virtually identical loan agreements.  For ease of reference, collective citation is made to the "Loan Agreement."  (*See* Am. Compl., Ex. A.)  Furthermore, pin point citations are given based on the location in Plaintiff Jackson's Loan Agreement and the page numbers printed in the upper right corner of each page.  (*See id.*)

In October 2011, Plaintiffs Jackson and Gonnella commenced this action, on their own behalf and on behalf of others similarly situated. On January 26, 2012, Plaintiffs filed an Amended Complaint, adding Plaintiff Binkowski. Basically, the Amended Complaint alleges that Defendants charged unlawful fees and interest in connection with Plaintiffs' loans. To this end, the Complaint asserts four claims against the Defendants: (1) a claim for alleged violation of the Illinois Interest Act; (2) a claim for alleged criminal usury; (3) a claim for alleged violations of the Illinois Consumer Fraud and Deceptive Practices Act; and (4) a claim seeking the invalidation of the Arbitration Agreement contained in the Loan Agreement. The Payday Defendants now seek to have this case dismissed or stayed in favor of the binding arbitration required under the Loan Agreement.

### III. ARGUMENT

**A. Tribal Exhaustion Requires That the Case Be Dismissed or Stayed.**

"The doctrine [of tribal exhaustion] requires litigants, in some instances, to exhaust their remedies in tribal courts before seeking redress in federal courts." *Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 812 (7th Cir. 1993). The doctrine is motivated by the desire to support tribal self-determination and self-government; the belief that tribal courts are vital to tribal self-government; and the recognition that a tribal court's authority is diminished by a federal court's exercise of jurisdiction over reservation affairs. *Id.* at 813 (citing *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 14-15 (1987); *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985)).

The application of tribal exhaustion to the activities of non-Indians on reservation lands is presumed. *See Altheimer*, 983 F.2d at 813 (citing *Iowa Mutual*, 480 U.S. at 18). Even off-reservation activity is subject to tribal exhaustion if, "at a bare minimum," it impacts directly upon tribal affairs. *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207

F.3d 21, 32 (1st Cir. 2000) (citing *Altheimer*, 983 F.2d at 814; *Basil Cook Enters. v. St. Regis Mohawk Tribe*, 117 F.3d 61, 66 (2d Cir. 1997)).  Although the analysis of the impact on tribal affairs can be highly fact-dependant, there are at least three circumstances, any one of which undoubtedly satisfy the test: (1) where there is a direct attack on a tribal court's jurisdiction, (2) where a case is pending in tribal court, and (3) where the dispute concerns tribal law more than it does state and federal law.  *Altheimer*, 983 F.2d at 814.

The present case satisfies the first and third items on the list.[2]  Count IV of the Amended Complaint directly attacks the appointment of the Arbitrators, a Tribal adjudicative body.[3]  (*See* Am. Compl. ¶¶ 93-95.)  Plaintiffs also attack the jurisdiction of the Tribal court by filing this case in Illinois, which violates Plaintiffs' agreement to "consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court."  (Loan Agreement at 2.)

This case also requires the interpretation and application of the laws of the Cheyenne River Sioux Tribe.[4]  (*See* Loan Agreement at 2, 4.)  Tribal exhaustion acknowledges a Tribal Court's expertise regarding its own laws and protects a tribe's ability to "interpret its own ordinance and define its own jurisdiction."  *Altheimer*, 983 F.2d at 814 (quoting *Burlington Northern R.R. v. Crow Tribal Council*, 940 F.2d 1239, 1246 (9th Cir. 1991)).

If the Court prevents a Tribal adjudicator from hearing this case, a cascading erosion of the policy interests underlying tribal exhaustion would result.  First, it "would place the two

---

[2]  The second item – a pending tribal court action – is not required for the application of tribal exhaustion.  *Ninigret*, 207 F.3d 21 (citing cases).

[3]  The adjudicators' status as Arbitrators, rather than Tribal Court Judges, is of no import.  *See generally Ninigret*, 207 F.3d 21.

[4]  Each Loan Agreement contains a choice-of-law provision which states: "This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation."  (Loan Agreement at 2 (bold type-face omitted).)

judicial systems in direct competition with each other, and thereby undermine the tribal court's authority over tribal affairs." *Ninigret*, 207 F.3d at 33. This, in turn, helps erode confidence in the authority and reputation of that institution. The weakening of Tribal legal institutions has a detrimental impact on the Tribe's efforts toward self-government and autonomy. Tribal exhaustion exists to prevent these negative results. Therefore, the Court should apply tribal exhaustion and either dismiss or stay the present case. *See Altheimer*, 983 F.2d at 813 (the Court may choose between the two remedies).

**B.      The Court May Dismiss this Case for Improper Venue.**

  **1.      The Provisions of the Loan Agreement Preclude Litigation in Illinois.**

The Loan Agreement contains a forum-selection clause.[5] Accordingly, "any dispute [the borrower] ha[s] with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration" which "shall be conducted in the Cheyenne River Sioux Tribal Nation."[6] (Loan Agreement at 2.) Irrespective of the Arbitration requirements, the forum-selection clause dictates that this case cannot proceed in the present forum. Because the case has been filed in an improper venue, a Rule 12(b)(3) motion to dismiss is properly granted. *Thompson v. Fajerstein*, No. 08 C 3240, 2008 WL 4279983, at *4 (N.D. Ill. Sept. 17, 2008) (Kocoras, J.) (citing *Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir.2003)).

---

[5]      The Court may consider the actual terms of the Loan Agreements. *See* FED. R. CIV. P. 10(c); *Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

[6]      The Loan Agreements reiterate this point: "You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement." (Loan Agreements at 5.)

### 2.     The Forum-Selection Clause Is Enforceable.

"Contractual forum selection clauses are *prima facie* valid and should be enforced like any other contractual provision unless they are unreasonable or the product of fraud or undue influence." *Penn, L.L.C. v. New Edge Network, Inc.*, No. 03 C 5496, 2003 WL 22284207, at *2 (N.D. Ill. Oct. 3, 2003) (Conlon, J.) (citing *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375–76 (7th Cir.1990); *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972)).[7]  The party who selects the venue bears the burden of establishing that it was properly chosen and that the forum-selection-clause is inapplicable.  *Penn, L.L.C.*, 2003 WL 22284207, at *1.

In the present case, the forum-selection clause is enforceable because the Plaintiffs cannot establish that it is unreasonable, the product of fraud, or the product of undue influence. For example, the Plaintiffs were given ample notice of the forum selection.  At least five statements in the Loan Agreement specifically convey or allude to the fact that any dispute will be resolved in the Cheyenne River Sioux Reservation.  (*See* Loan Agreement at 2, 5, 6.) Moreover, the Plaintiffs separately acknowledged and agreed to the Arbitration Agreement, which itself contains multiple statements about the forum selection. (*See* Loan Agreement at 7.)

The Plaintiffs made a highly discretionary choice when they entered into the Loan Agreement; neither Plaintiff was "'a hapless consumer' subjected to a gun-to-the-head moment." *Schwarz v. Sellers Markets, Inc.*, --- F. Supp. 2d ----, 2011 WL 3921425, at *3 (N.D. Ill.  Sept. 07, 2011) (Feinerman, J.).  The Plaintiffs applied for loans at their own pace, over the internet.

---

[7]     The citation to federal law in this brief is not a waiver of the Loan Agreement's choice-of-law clause.  As a general matter, Cheyenne River Sioux Tribal courts are guided by federal law as they apply Tribal law.  *See, e.g.*, *Ducheneaux v. Cheyenne River Sioux Tribe Election Bd.*, 2 Am. Tribal Law 39 (Cheyenne River Sioux C.A. May 25, 1999); *Deschuquette v. Cheyenne River Sioux Tribe Housing Auth.*, 1 Am. Tribal Law 53 (Cheyenne River Sioux C.A. Feb. 20, 1998) (appointment of counsel).  Therefore, federal law provides an indication of how Tribal courts would decide the matters, and does not serve as a waiver of the selection of Tribal law.

(*See* Am. Compl. ¶ 33; *see generally* Loan Agreement.) There was no deadline or other pressure to sign the Loan Agreements immediately, and the Plaintiffs could have walked away at any moment. Instead, each of the Plaintiffs made the conscious decision to enter the Loan Agreement and "is presumed to know its terms and consent[] to be bound by them." *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 n.10 (7th Cir. 1993).

Furthermore, proceeding on the Reservation will not impose such difficultly or inconvenience on the Plaintiffs to justify the invalidation of the forum-selection clause. *See AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) (requiring that "the selected forum [be] so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court" (alteration marks omitted)). To the contrary, the Loan Agreement explicitly allows the Plaintiffs to appear by telephone, to the extent they need or wish to do so. (*See* Loan Agreement at 5 ("[Y]ou will not be required to travel to the Cheyenne River Sioux Tribal Nation").)

Enforcement of the forum-selection clause is in line with Illinois' public policy, the forum in which this suit was originally brought. *See AAR*, 250 F.3d at 525. Under Illinois law, consumer protection and usury laws do not constitute public interests which are strong enough to invalidate contractual choice-of-forum provisions. *See Amaro v. Capital One Bank*, No. 97 C 4638, 1998 WL 299396, at *7-8 (N.D. Ill. May 21, 1998) (Grady, J.). Instead, as was the case in *Carnival Cruise Lines, Inc. v. Shute*, (1) some portion of the Defendants do business with customers in a variety of locations and have a special interest in limiting the fora in which they can be sued; (2) the clause dispels confusion about where suit can be brought; (3) by limiting the fora in which Defendants can be sued, customers receive a benefit by way of a reduced rates; and

7

(4) there is no evidence that the Plaintiffs were physically or financially unable to litigate in the

agreed-upon forum.  *See* 499 U.S. 585, 587 (1991).

### 3.    Dismissal is Appropriate.

Therefore, the forum-selection clause requires the Plaintiffs to bring their suit in South

Dakota on the Cheyenne River Reservation.[8]  The Payday Defendants may insist that the case be

dismissed based on the forum-selection clause and Rule 12(b)(3).[9]  *See, e.g., Continental Cas.*

*Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).  Once again, the Payday

Defendants are entitled to insist that the forum-selection clause be enforced and the case be tried

in a Tribal forum.  However, the Payday Defendants would be willing to forego this right if the

Plaintiffs agree to submit the case to individual binding Arbitration in Illinois, as more fully

discussed below.

### C.    The Arbitration Agreement Prevents the Case from Proceeding in This Court.

There is a strong federal policy in favor of arbitration and the enforcement of arbitration

agreements.  *See AT&T Mobility LLC v. Concepcion*, --- U.S. ----, 131 S. Ct. 1740, 1745 (2011).

Therefore, "questions of arbitrability must be addressed with a healthy regard for the federal

---

[8]    In fact, because the Payday Defendants are members of the Tribe, or wholly owned thereby, their on-Reservation commercial activities are immune from state law, except where that immunity has been waived.  *See Williams v. Lee*, 358 U.S. 217, 220-23 (1959).  A contractual Arbitration clause may serve as a waiver regarding only the specifically listed claims and fora.  *See C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411 (2001).  Here, the immunity waiver in the Loan Agreement permits only adjudication in the Cheyenne River Reservation.

[9]    The Court also potentially could dismiss this case under Rule 12(b)(1) or the doctrine of *forum non conveniens*.  *See, e.g., Ninigret*, 207 F.3d at 35 (Rule 12(b)(1)); 14D CHARLES A. WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 3828 (3d ed.) (noting that reliance on *forum non conveniens* is appropriate for cases in federal court which cannot be transferred to the proper court).  There is little difference between the analysis under *forum non conveniens* and the one under Rule 12(b)(3).  The Loan Agreement contains a mandatory forum-selection clause, so "the usual *forum non conveniens* analysis no longer applies, and the only question remaining for the district court to determine is whether the forum selection clause is enforceable under the standards set forth in [*Bremen*]." *AAR*, 250 F.3d at 524-25.

policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In light of this policy, in order "[t]o compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Mori v. East Side Lenders, LLC*, No. 1:11–CV–01324, 2011 WL 2518966, at *2 (N.D. Ill. June 24, 2011) (Coleman, J.) (citing *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006)).

### 1.     The Loan Agreement Contains an Agreement to Arbitrate.

The Loan Agreements attached to the Complaint contain Plaintiffs' electronic signatures. (*See* Loan Agreement at 7.)  Plaintiffs do not contend otherwise. (*See, e.g.*, Am. Compl. ¶¶ 48, 49, 50.)  The Loan Agreement contains an Arbitration Agreement which requires that "all claims or demands," regardless of the theory or relief sought, be submitted to binding Arbitration. (Loan Agreement at 5.)  By entering into a Loan Agreement, the Plaintiffs "agree that [they] are waiving [their] right to a jury trial to have a court decide [their] dispute, to participate in a class action lawsuit, and to certain discovery and other procedures that are available in a lawsuit." (Loan Agreement at 5.)  "Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by [the borrower's] choice of either (i) a Tribal Elder, or (ii) a panel of three (3) members of the Tribal Council, and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer dispute rules and the terms of this Agreement." (Loan Agreement at 5.)  "This arbitration provision . . . shall be governed by the law of the Cheyenne River Sioux Tribe." (Loan Agreement at 6.)  When applying for their loans, each Plaintiff checked a box which specifically acknowledged the existence and effect of the Arbitration Agreement.  (*See* Loan Agreement at 7.)

### (a)     The Arbitration Agreement Is Valid.

The Loan Agreement and its Arbitration provisions are governed by the laws of the Cheyenne River Sioux Tribe.  (*See, e.g.*, Loan Agreement at 4, 6.)  As discussed previously, Cheyenne River Sioux Tribal Courts look to federal law, such as the Federal Arbitration Act (or "FAA"), for guidance in applying Tribal law.  Moreover, the procedural provisions of the FAA, such as 9 U.S.C. § 3, dictate the manner in which this Court should examine the present Motion, even though the parties' substantive rights are governed by Tribal law.  Therefore, contrary to Plaintiffs' inconsistent contention,[10] the Arbitration Agreement is enforceable under Tribal and Federal interpretations of the FAA.

### (b)     The Arbitration Agreement Is Not Racially Discriminatory

There is no inherent legal flaw in appointing Tribal members or Tribal council members as Arbitrators.  *See Ninigret Dev. Corp.*, 32 F. Supp. 2d at 504, 505, *rev'd on other grounds*, 207 F.3d 21.  Indeed, "[n]onjudicial tribal institutions have also been recognized as competent law-applying bodies."  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 66 (1978).  Moreover, the "Choice of Arbitrator" clause in the Loan Agreement does not establish a race-based requirement.  (*See* Loan Agreement at 5.)  The Cheyenne River Sioux Tribal is a political entity. Arbitrations conducted by Tribal institutions will be staffed by members of the Tribe.  This is no different than, for example, the fact that an Arbitration by an English institution will be staffed by English citizens.  *Cf. Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972) (enforcing forum-

---

[10]     The Plaintiffs' Amended Complaint puts them in a Catch-22.  On the one hand, they contend that, under the choice-of-law clause, federal and state law (both of which favor the enforcement of arbitration agreements) do not apply to the Loan Agreement. If they are correct that state law does not apply, then Plaintiffs' claims, which are based on state law, must be dismissed.  By asserting state-law claims, Plaintiffs presumably believe that the choice-of-law clause (which imposes Tribal law over the Loan Agreement) is inapplicable.  If this were so, state and federal law indubitably command the submission of the entire action to binding individual arbitration.

selection clause naming England as the situs). The Arbitrators' nationality – be it Tribal, British, Mexican, or what have you – is not a qualification, but rather is simply a product of the locale.

Even if Plaintiffs could establish that this Choice of Arbitrator clause was in some way deficient, that would not invalidate the entire agreement. Instead, as required by the Arbitration Agreement's severance clause, "[i]f any of this Arbitration Provision is held invalid, the remainder shall remain in effect." (Loan Agreement at 6.); *see Mori*, 2011 WL 2518966, at *5 (noting that severance clause allowed court to strike portion of Arbitration Agreement regarding the identity of the Arbitrator). In such a case, the Court can designate an Arbitrator. *See* 9 U.S.C. § 5 (2006).

<strong>(c)    Potential Inconvenience to the Plaintiffs Is Not a Ground for Invalidating the Arbitration Agreement.</strong>

"Increased cost and inconvenience are insufficient reasons to invalidate foreign forum-selection or arbitration clauses." *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 37 (5th Cir. 1997) (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995); *Carnival*, 499 U.S. at 603). As discussed above, any alleged inconvenience incurred by the Plaintiffs is insufficient to invalidate the forum-selection clause. Again, the Loan Agreement lessens the potential burden on the Plaintiffs by allowing them to appear by telephone, rather than in person.

Once again, even though the Payday Defendants are entitled to enforce the arbitration clause as written, they are willing to waive the forum-selection clause, in lieu of individual arbitration in Illinois, thus eliminating any concern regarding the inconvenience of a South Dakota forum.

**2.    Plaintiffs' Claims Are Within the Scope of the Arbitration Agreement.**

The Arbitration Agreement broadly covers any claims arising from the Loan Agreement:

> Arbitration is a means of having an Independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement.

(Loan Agreement at 5.) Plaintiffs assert four claims – three regarding the fees and interest charged under the loans, and one attempting to invalidate the Arbitration Agreement. It is without question that each of these claims is "concerning the validity, enforceability, or scope of [a] loan or the Arbitration agreement."

**3. Plaintiffs Have Refused to Arbitrate.**

By filing the present action, Plaintiffs have sufficiently demonstrated their refusal to arbitrate their otherwise arbitrable claims. *See, e.g., Laif X SPRL v. Axtel, SA*, 390 F.3d 194, 198 (2d Cir. 2004) ("A party has refused to arbitrate if it commences litigation" (citation omitted)); *First Family Fin. Serv. v. Fairley*, 173 F. Supp. 2d 565, 572 (S.D. Miss. 2001) ("The Court cannot conceive of a more explicit refusal to arbitrate than the bringing of an arbitrable claim in state court that one has contractually agreed to arbitrate."); *Solieri v. Ferrovie Dello SPA*, No. 97-8844, 1998 WL 419013, at *5 (S.D.N.Y. July 23, 1998) (court may compel arbitration "if the other party has proceeded to sue on claims which are arbitrable").

Therefore, the three requirements for compelling arbitration have been satisfied. *See Mori*, 2011 WL 2518966, at *2.

12

**4.      The Court Should Stay This Case and Require the Plaintiffs to Pursue Arbitration Under the Loan Agreement.**

Having demonstrated that Arbitration is appropriate in this case, the proceedings in this Court should be stayed pending arbitration.  The FAA requires:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (2006).  Therefore, the Payday Defendants request that the Court apply § 3 of the FAA, and stay these proceedings until arbitration can take place in accordance with the Loan Agreement.

**D.      If the Court Declines to Otherwise Dismiss or Stay This Case, Dismissal Is Still Appropriate.**

If the Court dismisses or stays this case, the analysis ends there.  *See, e.g.*, *Mori*, 2011 WL 2518966, at \*5 ("If the district court determines that the agreement to arbitrate is valid, the court has no further power or discretion to address the issues raised in the complaint and must stay the proceedings and order arbitration." (citing *Volkswagen of Am., v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007)).  If, for some reason, the Court declines such a dismissal or stay, other threshold challenges to Plaintiffs' claims become ripe.

**1.      Plaintiffs' Claims Should Be Dismissed Based on the Choice-of-Law Clause.**

The Loan Agreement makes clear that the substantive laws of the Cheyenne River Sioux Tribe govern.  (*See, e.g.*, Loan Agreement 2, 5, 6.)  "It is only under exceptional circumstances that a district court will not honor a reasonable choice-of-law provision."  *Mori*, 2011 WL

13

2518966, at *5 (citing *Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009)). [11]

"When a contract contains a choice of law provision, the law of the state chosen by the parties will be applied to any issue which the parties could have resolved by an explicit provision in their contract." *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 922 (N.D. Ill. 2003) (Manning, J.) (citing *Scientific Holding Co. v. Plessey Inc.*, 510 F.2d 15, 22 (2d Cir. 1974); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971)). Similarly, the parties cannot pursue claims under the laws of a state which has not been selected; any such claims must be dismissed. *DeJohn*, 245 F. Supp. 2d at 922. Consequently, Plaintiffs' claims – which are uniformly raised under Illinois law – cannot proceed and should be dismissed for failure to state a claim under Rule 12(b)(6). *See, e.g.*, *Amaro*, 1998 WL 299396, at *7-8 (noting that consumer protection and usury laws do not supersede a choice-of-law provision).

2.      **Plaintiffs' Class Claims Should Be Dismissed Based on the Class-Action-Waiver Clause.**

The Loan Agreement prevents the Plaintiffs from bringing class action lawsuits in connection with a loan. (*See* Loan Agreement at 4, 5, 6.) Class-action-waivers are enforceable both in conjunction with and separate from arbitration agreements. *See AT&T Mobility LLC v. Concepcion*, --- U.S. ----, 131 S. Ct. 1740 (2011); *Bonanno v. Quizno's Franchise Co., LLC*, No. 06-cv-02358-CMA-KLM, 2009 WL 1068744, at *11 (D. Colo. Apr. 20, 2009) (enforcing class-action waiver provision that did not accompany an arbitration clause). If the Court declines to dismiss or stay this case pending arbitration, the Payday Defendants request that the case be

---

[11]      Once again, Defendants' citation to federal law in this brief is not a waiver of the Loan Agreement's choice-of-law clause. Rather – as discussed in note 5, *supra* – federal case law serves as a guide on how Cheyenne River Sioux Tribal courts would decide similar matters.

dismissed pursuant to Rule 12(b)(6) or relevant arbitration law because the class-action posture violates the class-action waiver in the Loan Agreement.

### IV.    CONCLUSION

WHEREFORE, Defendants Payday Financial, LLC, Western Sky Financial, LLC, Great Sky Finance, LLC, Red Stone Financial, LLC, Management Systems, LLC, 24-7 Cash Direct, LLC, Red River Ventures, LLC, High Country Ventures, LLC, Financial Solutions, LLC, and Martin A. Webb respectfully request that the Court dismiss this case or, in the alternative, stay the matter until Arbitration can be completed under the terms of the Arbitration Agreement.

DATED this 3rd day of February 2012.

Respectfully submitted,

**Payday Financial, LLC, Western Sky Financial, LLC, Great Sky Finance, LLC, Red Stone Financial, LLC, Management Systems, LLC, 24-7 Cash Direct, LLC, Red River Ventures, LLC, High Country Ventures, LLC, Financial Solutions, LLC, and Martin A. Webb**,

Defendants.

By:    /s/  Ralph T. Wutscher
       One of Their Attorneys

Ralph T. Wutscher
Jeffrey T. Karek
MCGINNIS TESSITORE WUTSCHER LLP
The Loop Center Building
105 W. Madison Street, 18th Floor
Chicago, Illinois 60602
Tel. (312) 416-6170
Fax: (312) 284-4751

**Certificate of Service**

Ralph T. Wutscher, an attorney, hereby certifies that on **February 3, 2012**, service of a true and correct copy of this document and any referenced exhibits was accomplished pursuant to ECF on all parties who are Filing Users.

/s/ Ralph T. Wutscher
Ralph T. Wutscher