UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH JACKSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 11 C 9288 |
| | ) | |
| PAYDAY FINANCIAL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Defendants' motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). For the reasons set forth below, the Court grants the motion for improper venue.[1]

## BACKGROUND[2]

Three Illinois consumers are suing an internet lender, his several businesses, and two debt collectors for allegedly charging annual interest rates well above 100%, in violation of Illinois' civil and criminal usury statutes and consumer fraud statute. In

---

[1]Defendant CashCall, Inc. filed a motion to dismiss Plaintiff Deborah Jackson from the lawsuit for lack of standing. Also, Defendants assert that we should dismiss or stay the instant suit under the tribal exhaustion doctrine, Federal Rule of Civil Procedure 12(b)(6), or Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. Because we find that the Loan Agreement's forum selection clause is enforceable and that the Cheyenne River Sioux Tribal Nation is the proper and exclusive venue for this action, we need not rule on Defendants' alternative grounds for dismissal.

[2] We accept as true the factual allegations in Plaintiffs' amended complaint. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

2010 and 2011, Illinois residents Deborah Jackson ("Jackson"), Linda Gonnella ("Gonnella"), and James Binkowski ("Binkowski") (collectively "Plaintiffs") each obtained loans for $2,525 from Western Sky Financial, LLC ("Western Sky"), a "pay day loan" business chartered in Timber Lake, South Dakota. The interest rate on Jackson's and Binkowski's loans was 139.33%, while Gonnella's was 138.99%. Defendant WS Funding, LLC now owns the debt owed by Gonnella.

Defendant Martin A. Webb ("Webb") owned and controlled Defendants Western Sky, along with Payday Financial, LLC; Great Sky Finance, LLC; Red Stone Financial, LLC; Management Systems, LLC; 24-7 Cash Direct, LLC; Red River Ventures, LLC; High Country Ventures, LLC; and Financial Solutions, LLC (collectively the "Webb Entities"). Webb ran the Webb Entities as a common enterprise, and each entity listed the same Timber Lake, South Dakota address as its principal place of business. Webb is a member of the Cheyenne River Sioux Tribe (the "Tribe"). He is not a Tribal official, and the Tribe maintains no role or relationship in the ownership or operation of the Webb Entities, which is noted on Payday Financial LLC's website.

The Webb Entities advertised via internet and television to Illinois consumers, offering loans between $300 and $2,525. They charged interest rates over 100% despite not holding a banking charter or a license from the Illinois Department of Financial and Professional Regulation, whose authorization is required for lenders to charge interest

rates greater than 9%. To receive a loan from the Webb Entities, borrowers must agree to and sign a six-page contract ("the Loan Agreement") which delineates the rights of each of the parties with respect to the loan. The Loan Agreement provides that the parties resolve any dispute arising out of the loan transaction by arbitration on the Tribal Reservation applying Tribal law.[3]

Jackson and Gonnella filed a four-count class-action lawsuit against Webb, the Webb Entities, and WS Funding, LLC, in the Circuit Court of Cook County. *See Jackson v. Payday Financial, LLC*, Case No. 11-CH-35207 (Oct. 11, 2011). The suit was removed to this Court under the Class Action Fairness Act. 28 U.S.C. 1332(d). After removal, Plaintiffs amended their complaint to add Binkowski as a plaintiff and CashCall, another debt collector that purchased and owns debts from Webb and the Webb Entities, as a defendant. Counts I-III allege that Defendants violated Illinois' civil and criminal usury statutes, 815 ILCS 205/4(1) and 720 ILCS 5/17-59, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815ILCS 505/2, by charging unlawfully high interest rates. Count IV prays for declaratory and injunctive relief from enforcement of the arbitration clause.

Webb, the Webb Entities, and CashCall (collectively "Defendants") move to dismiss this suit under Federal Rule of Civil Procedure 12(b)(3) for improper venue.

---

[3] Borrowers may litigate the dispute in person, by telephone, or by video conference.

## LEGAL STANDARD

A motion to dismiss based on the enforcement of an arbitration clause is treated as an objection to venue and is properly brought under Federal Rule of Civil Procedure 12(b)(3). *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2009); *see also Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) (holding that dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(3) where a forum selection clause requires that a dispute be arbitrated outside of the district in which the suit is brought). When a defendant challenges venue under Federal Rule of Civil Procedure 12(b)(3), it is the plaintiff's burden to establish that venue is proper. *Faur v. Sirius Int'l Ins. Corp.*, 391 F. Supp. 2d 650, 657 (N.D. Ill. 2005). In considering a motion to dismiss under Rule 12(b)(3), the Court construes all facts and draws all reasonable inferences in favor of the plaintiffs. *Faulkenberg*, 637 F.3d at 806.

## DISCUSSION

The Loan Agreement states that any dispute arising under the Loan Agreement "will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative . . . ."

Under both Illinois and federal law, a forum selection clause is *prima facie* valid and enforceable unless (1) the clause's incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so

- 4 -

gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcing the clause would contravene a strong public policy of the forum in which the suit is brought, as declared by statute or judicial decision. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001). Plaintiffs assert that the forum selection clause is not valid because: (1) it furthers an illegal contract; (2) Plaintiffs' financial straits left them susceptible to Defendants' overreaching; and (3) it is contrary to Illinois' strong public policy.

First, Plaintiffs claim that the forum selection clause is not enforceable because it is part of an illegal contract, and sustaining such a clause would further an illegal objective and thus would be contrary to Illinois public policy. The Seventh Circuit spoke directly on this issue in *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759 (7th Cir. 2006), in which it considered whether a forum selection clause was "void and unenforceable as against public policy" where the underlying contract set out an illegal pyramid scheme. *Id.* at 762. The Seventh Circuit held that the forum selection clause was enforceable because a contrary ruling would have required the court to decide the contract's legality before deciding whether it should consider the case at all – a scenario the court deemed "an absurdity." *Id.* Plaintiffs now seek to invalidate the forum selection clause with the same failed argument that the plaintiffs advanced in *Mazumdar*. But as the Seventh Circuit found, doing so would require us to rule on the

substance of their complaint before reaching the threshold question of whether venue in this court is proper in the first instance. Therefore, the alleged illegality of the Loan Agreement has no bearing on the validity of the forum selection clause.

Next, Plaintiffs argue that the forum selection clause is void because it was procured by duress. Plaintiffs claim that the Webb Defendants preyed on Plaintiffs' financial desperation by dangling needed funds in front of them and then conditioning disbursement on Plaintiffs' assent to the clause.

The allegations in the complaint do not permit for a reasonable inference that the Webb Defendants procured Plaintiffs' assent to the Loan Agreement under duress. Plaintiffs obtained their respective loans after presumably reading through and signing the Loan Agreement. The Loan Agreement explicitly and conspicuously identified the parties' choice of forum. A party to a contract has an obligation to read its provisions, is presumed to know its terms, and consents to be bound by them. *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 n.10 (7th Cir. 1993). There is no allegation that the Webb Entities applied any pressure to Plaintiffs to sign the Loan Agreement, or used any deadlines to procure Plaintiffs' consent to the Loan Agreement. Plaintiffs' difficult financial circumstances alone do not warrant invalidating the forum selection clause. *See CIT Group/Credit Fin., Inc. v. Lott*, Case No. 93 C 0548, 1993 U.S. Dist. LEXIS 6669, at *5-6 (N.D. Ill. May 12, 1993) (*citing Cont'l Ill. Nat'l Bank & Trust Co. v.*

*Stanley*, 606 F. Supp. 558, 562 (1985)) ("Duress does not exist merely where consent to an agreement is secured because of . . . the pressure of financial circumstances . . . ."). Thus, Plaintiffs' argument fails.

Finally, Plaintiffs assert that Illinois' strong public policy in favor of enforcing its usury and consumer protection laws precludes enforcement of the forum selection provision. Illinois' public policy is set out in its Constitution, statutes, and long-standing case law. *In re Estate of Feinberg*, 919 N.E.2d 888, 894 (Ill. 2009). Plaintiffs argue that their right to sue under Illinois' usury and consumer protection statutes cannot be waived by contract. Furthermore, Plaintiffs argue, it would be against Illinois public policy to deny its residents the benefit of its consumer protection laws. However, Plaintiffs cite to no sources establishing Illinois' purported public policy of having its usury laws exclusively enforced in Illinois courts. To the contrary, Illinois and Seventh Circuit case law indicate that a party may prospectively waive by contract her statutory right to litigate in her preferred forum, even if the likelihood of success in a contractually selected forum is less favorable. *See Bonny*, 3 F.3d at 162 (holding that a contract clause choosing England as the forum was enforceable despite the fact that enforcement allowed the defendant to avoid liability under American and Illinois securities laws); *Omron Healthcare v. Maclaren Exports*, 28 F.3d 600, 604 (7th Cir. 1994) (ruling that a forum selection clause choosing the High Court of Justice in

England is enforceable, even if that tribunal may be biased against the plaintiff); *Walker v. Carnival Cruise Lines, Inc.*, 889 N.E.2d 687, 696 (Ill. App. Ct. 1st Dist. 2008) (contract clause accompanying a cruise line ticket choosing Miami, Florida as the forum to resolve future disputes was enforceable despite the possible deterrent effect on "plaintiff's ability to pursue her case."); *see also Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 759 (Ill. App. Ct. 2d Dist. 1987) (holding that a choice-of-law provision selecting Michigan law was valid even though Michigan law deprived plaintiff of a remedy). Plaintiffs therefore fail to demonstrate that Illinois' public policy warrants invalidating their freely contracted choice to litigate their dispute in the Tribal forum.

Because Plaintiffs have not identified any basis for invalidating the forum selection clause, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) is granted.

## CONCLUSION

For the reasons stated above, we grant Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(3).

Charles P. Kocoras
United States District Judge

Dated:   July 9, 2012

- 8 -