UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH JACKSON, et al., | ) |
| Plaintiffs, | ) |
| v. | ) 11 C 9288 |
| PAYDAY FINANCIAL, LLC, et al. | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is denied in part and granted in part.

### BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Plaintiffs' second amended complaint are accepted as true for the purposes of this motion. The Court draws all reasonable inferences in favor of Plaintiffs. *Purdue Research Found v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).

Three Illinois consumers have initiated suit against an internet lender, numerous corollary businesses associated with the lender, and two debt collection companies for allegedly charging annual interest rates well above 100%, in violation

of Illinois' civil and criminal usury statutes and a consumer fraud statute.  Between 2010 and 2011, Illinois residents Deborah Jackson ("Jackson"), Linda Gonnella ("Gonnella"), and James Binkowski ("Binkowski") (collectively the "Plaintiffs") each obtained loans for $2,525 from the Defendant Western Sky Financial, LLC ("Western Sky"), a "pay day loan" business chartered in Timber Lake, South Dakota.  The interest rate assessed on Jackson's and Binkowski's loans was 139.33%, and the interest rate charged on Gonnella's loan was 138.99%.  Defendant WS Funding, LLC ("WS Funding") now owns the debt owed by Gonnella.

Defendant Martin Webb ("Webb") owned and controlled Western Sky, in conjunction with Defendants Payday Financial, LLC; Great Sky Finance, LLC; Red Stone Financial, LLC; Management Systems, LLC; 24-7 Cash Direct, LLC; Red River Ventures, LLC; High County Ventures, LLC; and Financial Solutions, LLC (collectively the "Webb Entities").  Webb ran the Webb Entities as a common enterprise, and each entity listed the same Timber Lake, South Dakota address as its principal place of business.  Webb is a member of the Cheyenne River Sioux Tribe (the "Tribe").  He is not a Tribal official, and the Tribe maintains no role or relationship in the ownership or operation of the Webb Entities, which is noted on Payday Financial LLC's website.

The Webb Entities advertised through the internet and via televised commercials to Illinois customers, offering loans between $300 and $2,525.  The loans charged interest rates over 100% despite the Webb Entities not holding a

banking charter or a license from the Illinois Department of Financial and Professional Regulation, whose authorization is required for lenders to charge interest rates greater than 9%. To receive a loan from the Webb Entities, borrowers must agree to and sign a six-page contract ("Loan Agreement") which delineates the rights of each of the parties with respect to the loan.

On October 11, 2011, Jackson and Gonnella filed a four count class action lawsuit against Webb, the Webb Entities and WS Funding, LLC, in the Circuit Court of Cook County. *See Jackson v. Payday Financial, LLC*, Case No. 11-CH-35207 (Oct. 11, 2011). The suit was subsequently removed to this Court under the Class Action Fairness Act. 28 U.S.C. § 1332(d). After removal, Plaintiffs amended their complaint to add Binkowski as a Plaintiff and CashCall Inc. ("CashCall"), another debt collection agency that purchased and owns debts from the Webb Entities, as a Defendant. Plaintiffs' four count complaint alleges that Webb, the Webb Entities, and the collection agencies CashCall and WS Funding (collectively the "Defendants") violated the Illinois' Interest Act and the Illinois Criminal Usury statute, 815 ILCS 205/4(1) and 720 ILCS 5/17-59, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, by unlawfully charging high interest rates. Count Four seeks declaratory and injunctive relief from enforcement of the arbitration clause.

On July 9, 2012, this Court issued its memorandum opinion granting Defendants' motion for improper venue. *Jackson v. Payday Financial, LLC*, 11-cv-

9288, 2012 WL 2722024 (N.D. Ill. July 9, 2012). Plaintiffs appealed and the Seventh Circuit Court of Appeals found that the arbitration provision was unreasonable and was "procedurally unconscionable under federal, state and tribal law." *Jackson v. Payday Financial, LLC*, 764 F.3d 765, 786 (7th Cir. 2014). The Seventh Circuit remanded the case back to this Court to proceed in accordance with its directives.

On September 22, 2014, Defendants filed their renewed motion to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v.Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, the allegations in the complaint must "actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above a speculative level." *Tamayo*, 526 F.3d at 1084 (emphasis in original).

## DISCUSSION

Defendants levy numerous arguments in support of their motion to dismiss the Plaintiffs' second amended complaint. First, Defendants contend that the Dormant

Commerce Clause bars the application of Illinois law to Western Sky's loans, which were consummated outside of Illinois. Second, assuming arguendo that Illinois law is applicable, Defendants posit that Plaintiffs have not pled the essential elements of their claims. Finally, Defendants assert that Plaintiffs have failed to allege that the numerous Webb Entities who were not directly involved in the issuance of the loans in question should be dismissed. The Court will resolve each contention in turn.

   **1. Dormant Commerce Clause**

Defendants argue that the Dormant Commerce Clause precludes the application of Illinois law to Plaintiffs' Loan Agreement, thereby justifying the dismissal of their complaint. The U.S. Constitution's Commerce Clause grants Congress the authority to "regulate Commerce . . . among the several States." U.S. Const. Art I, § 8, cl.3. "Th[e] 'negative' aspect of the Commerce Clause is often referred to as the 'Dormant Commerce Clause' and is invoked to invalidate overreaching provisions of state regulation of commerce." *Alliant Energy Corp. v. Bie,* 330 F.3d 904, 911 (7th Cir. 2003); *see also Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n,* 545 U.S. 429, 433 (2005). The Dormant Commerce Clause limits the permissible "extraterritorial effects of state economic regulation." *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989). Additionally, the "Dormant Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy*, 491 U.S. at 336 (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982)).

Defendants principally rely on the holding in *Midwest Title Loans*, 593 F.3d 660, 664-65 (7th Cir. 2010), to support their contention that Plaintiffs' pay day loan contracts were completed and formed in South Dakota (where Western Sky approved and funded the loans) which precludes the application of Illinois law. Defendants' reliance on *Midwest Title Loans* is misplaced. In *Midwest Title Loans*, the plaintiff Midwest Title, an Illinois car title lender, sued to enjoin the application of Indiana's version of the Uniform Consumer Credit Code and premised their argument on the Dormant Commerce Clause. Indiana had enacted a "territorial application provision" which states a loan is deemed to occur in Indiana if a resident of Indiana entered into a loan transaction with a creditor in another state and the creditor had advertised or solicited loans in Indiana. *Midwest Title Loans*, 593 F.3d at 662. Midwest Title only maintained offices in Illinois and the car title loans were exclusively made within those offices. The borrower in the car title loan transaction was required to provide the keys to the vehicle subject to the loan in order to allow Midwest Title to exercise self-help repossession, if a default occurred. After finalizing the loan, Midwest Title would notify the Indiana Bureau of Motor Vehicles of the loan so that it would be noted on the official record of the borrower's title.

In determining the applicability of Indiana's laws to an Illinois company, the Seventh Circuit deemed the commute of Indiana residents across the states shared border with Illinois, to Midwest Title's Illinois offices, was the operative fact which justified not imposing Indiana's consumer protection laws against Midwest Title. "To

allow Indiana to apply its law against title loans when its residents transact in a different state that has a different law would be arbitrarily to exalt the public policy of one state over another." *Midwest Title Loans*, 593 F.3d at 667-68. In the case at bar, Defendants ignore the significant contacts that the Plaintiffs maintained with Illinois that were not shared with the Indiana borrowers in *Midwest Title Loans*. The Plaintiffs applied for the loans via the internet while in Illinois, the Defendants made their offer to lend to the Plaintiffs in Illinois and the Defendants wired the Plaintiffs' the loaned money to Illinois.

Underlying the Defendants' position that Dormant Commerce Clause bars the application of Illinois law lurks their overarching assertion that South Dakota law should govern the Loan Agreement. In evaluating the viability of the Loan Agreements mandatory arbitration provision in the case at bar, the Seventh Circuit noted that a "more-than -colorable argument can be made that the loan agreements' choice of law clause should not be enforced and that Illinois law ought to govern." *Jackson*, 764 F.3d at 775 n. 23. Although the Seventh Circuit did not explicitly determine that Illinois law should apply to this case, the court strongly suggests a rejection of the Defendants' choice of law argument.

"Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois' fundamental public policy." *Thomas v. Guardsmark, Inc.,* 381 F .3d 701, 704–05 (7th Cir. 2004) (finding that Illinois law permitted the court to recognize the choice-of-law clause in the parties'

agreement). A choice of law clause is unenforceable if it is unconscionable, immoral, illegal, contrary to public policy, or injures the public welfare. *Thomas v. Guardsmark Inc.*, 381 F.3d 701, 705-706 (7th Cir. 2004). The Plaintiffs' have pled that the interest rates charged by the Defendants which exceeded 100% are contrary to Illinois' fundamental public policy, as articulated in the Illinois Interest Act. The Illinois Interest Act indeed declares that charging interest rates over 9% is against public policy.

For present purposes, the Court need not make a definitive determination concerning the application of Illinois law to the case at bar. The Plaintiffs' have pled that they were physically present in Illinois when the contract was offered, accepted and formed. Construing the complaint in the light most favorable to the Plaintiffs, the Court finds Plaintiffs' have sufficiently pled that a valid contract was formed under Illinois law. Additionally, the Plaintiff have alleged that the Loan Agreements are unenforceable under Illinois law as being contrary to the public policy. At this stage of the proceedings, we view Illinois law to be applicable to the issues before the Court. The Defendants' motion to dismiss Plaintiffs' complaint based on the Dormant Commerce Clause is denied.

### 2. Plaintiffs Failure to State a Claim

Defendants argue that even if Illinois law is applicable, Plaintiffs have failed to sufficiently state a claim under the Illinois Interest Act, the Illinois Criminal Usury

statute, and the ICFA. The Court will sequentially resolve the merits of each of Defendants' arguments.

### A. Illinois Interest Act

Defendants argue that Plaintiffs' allegations concerning a violation of the Illinois Interest Act must be dismissed because the complaint does not allege that the Defendants had actual knowledge that their loans were unlawful. Under the Illinois' usury statutes, "[w]hether a loan is usurious depends on whether the party intended to charge unlawful interest." *Saskill v. 4-B Acceptance*, 453 N.E.2d 761, 765 (Ill. App. 1983). Plaintiffs' allege that Defendants knowingly lent money to the Plaintiffs' and charged interest rates over 130%, well over the 9% cap established by the Illinois Interest Act. The complaint further specifies that the Defendants were aware that the interest rates charged were unenforceable under Illinois law. The Defendants counter that they were under the belief that their loans would be governed by Cheyenne River Sioux tribal law, as specified in the Loan Agreement. Despite the Defendants assertions of their subjective beliefs, the present posture of the case does not support determining the facts of the case. *Id.* (a question of fact concerning the intent of the parties is "determined by the nature and substance of the transaction rather than its form, to insure against evasion of the statute by a party's ingenious scheme or device.") At this juncture, the Plaintiffs' well-pled allegations establish that the Defendants knew that the loans were unlawful under Illinois law.

Additionally, Defendants contend that the Illinois Interest Act solely applies to individuals and corporations actually in this state. Due to their lack of Illinois contacts, Defendants argue that the Illinois Interest Act does not apply to them. Defendants point to the language of the Illinois Interest Act which states, in pertinent part: "in all written contracts it shall be unlawful for the parties to stipulate or agree that 9% per annum, or any less sum of interest, shall be taken and paid . . . in any manner due and owing from any person to any other person or corporation in this state . . . except as herein provided." 815 ILCS 205/4(1). Defendants asserted limitation on the reach of the Illinois Interest Act is not persuasive. The Illinois Interest Act and other Illinois usury laws exist to broadly protect a "necessitous borrower" from an "unscrupulous lender." *See Rogus v. Continental Illinois Nat. Bank & Trust Co. of Chicago*, 281 N.E.2d 346, 348 (Ill. App. 1972). The portion of the Illinois Interest Act relied on by the Defendants merely enunciates the lawful nature of a 9% interest rate. If an individual or company wishes to exceed the cap interest rate, it must fall into one of the many established exceptions, which Defendants do not argue that they fit into.

Furthermore, another section of the Illinois Interest Act provides,

> When any written contract, wherever payable, shall be made in this state, or between citizens or corporations of this state, or a citizen or a corporation of this state and a citizen or corporation of any other state, territory or country (or shall be secured by mortgage or trust deed on lands in this state), such contract may bear *any rate of interest allowed by law* to be taken or contracted for by persons or

corporations in this state, or allowed by law on any contract for money due or owing in this state. 815 ILCS 205/8 (emphasis added).

The permissibility of charging "any rate of interest allowed by law" in a contract made by any individual of any state defeats the Defendants limited interpretation of the Illinois Interest Act. The Defendants' motion to dismiss Plaintiffs' Illinois Interest Act claim is denied.

### B. Illinois Criminal Usury Statute

Plaintiffs have alleged that Defendants are in violation of the Illinois Criminal Usury statute, 720 ILCS 5/17-59. The statute provides:

> (a) A person commits criminal usury when, in exchange for either a loan of money or other property or forbearance from the collection of such a loan, he or she knowingly contracts for or receives from an individual, directly or indirectly, interest, discount, or other consideration at a rate greater than 20% per annum either before or after the maturity of the loan.
> (b) When a person has in his or her personal or constructive possession records, memoranda, or other documentary record of usurious loans, the trier of fact may infer that he or she has violated subsection (a) of this Section. 720 ILCS 5/17-59.

The Illinois Criminal Usury statute does not expressly grant individuals a private right of action for a violation of its provisions. However, this lack of express permission is not fatal to Plaintiffs' claims. A court may determine that a private right of action is implied in a statute. *Rodgers v. St. Mary's Hospital*, 597 N.E.2d 616 (Ill.

1992). Illinois has determined that courts should consider four factors in weighing if a private right of action may be implied from a statute. Implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Id.* at 619.

After careful consideration of the applicable factors, the Court concludes that the Illinois Criminal Usury statute does not imply a private right of action for individuals subject to loans charging usurious interest rates. The Court finds the fourth factor determinative in light of the fact that the Illinois Criminal Usury statutes overlap with a variety of other Illinois civil causes of actions. The Illinois Supreme Court has made it clear that a court should "imply a private remedy where there exists a clear need to effectuate the purpose of an act." *Board of Education v. A, C & S, Inc.*, 546 N.E.2d 580, 599 (Ill. 1989). In support of their argument, Plaintiffs merely suggest that due to the criminal nature of the interest charges and the void legal status of the loan under Illinois law, the conduct warrants the application of the Illinois Criminal Usury statute. However, the legal status of the loan under Illinois law does not determine the availability of a private right of action for an Illinois criminal statute. Here, a private cause of action would be nearly identical to the Plaintiffs' other Illinois claims. The Illinois Interest Act and the ICFA were designed to regulate

the conduct alleged in the complaint and provide a remedy for usurious practices. These civil claims serve to "make an injured plaintiff whole" when the defendant fails to comply with Illinois' laws. *See McCarthy v. Kunicki*, 823 N.E.2d 1088, 1099 (Ill. App. 2005). Accordingly, an implied right of action under the Illinois Criminal Usury statute is not necessary where Plaintiffs' Illinois Interest Act and ICFA actions serve as a sufficient remedy. Defendants' motion to dismiss Count II is granted.

### C. ICFA

Defendants move to dismiss Plaintiffs' ICFA claims due to: 1) a disagreement about the application of the ICFA; 2) the ICFA failing to allow for recovery based on a violation of the Illinois Interest Act; and 3) Plaintiffs' failure to allege that they suffered an injury as a proximate cause of Defendants' conduct.

#### a. Disagreement Concerning the Application of the ICFA

Defendants argue that the Plaintiffs' ICFA claim should be dismissed because there exists a legitimate disagreement about whether the alleged conduct is unlawful under the ICFA. Defendants fortify their argument by relying on *Stern v. Norwest Mort. Inc.*, 672 N.E.2d 296, 301 (Ill. App. 1996), for the proposition that the existence of a "reasonable difference of opinion as to the meaning" of a statute cannot support a ICFA claim. However, the *Stern* Court went on to state that "there must be a claim seated in deceptive acts rather than a reasonable difference of opinion as to the meaning of an act of the Illinois General Assembly." *Id*. at 302.

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002). It is to be liberally construed to effectuate its purpose. *Cripe v. Leiter*, 703 N.E.2d 100 (Ill. 1998). Courts have held that an individual can pursue two types of claims under the ICFA: 1) a claim alleging that the conduct is unfair; and 2) a claim alleging that the conduct is deceptive. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010); *see also Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602 (Ill. App. 1996). Plaintiffs have alleged that the Defendants' conduct was unfair for the purposes of pleading an ICFA claim.

To show that particularized conduct constitutes an "unfair practice" under the ICFA, the practice must offend public policy, be immoral, unethical, oppressive, unscrupulous or cause substantial injury to consumers. *Robinson,* 775 N.E.2d at 961. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* For present purposes, the Plaintiffs have pled that the Defendants engaged in unfair conduct in violation of the ICFA for "contracting for and collecting finance charges, interest, and fees, from Illinois residents, in excess of the amounts permitted by Illinois law." In light of Illinois' enactment of several consumer protection statutes limiting the permissible interest charged to Illinois residents, the Court finds that the alleged assessment of interest

over 100% is unscrupulous and oppressive and sufficiently constitutes an unfair practice.

Defendants submit their argument concerning a "reasonable difference of opinion" as a guise for their ultimate contention that Illinois law should not be applicable to the Loan Agreements. It is not the contention of the Defendants that the ICFA is ambiguous or vague in defining the conduct it prohibits. Defendants go further and ultimately challenge the application of Illinois law to their conduct. Defendants have moved for dismissal based on Plaintiff's failure to state a claim. Plaintiffs' have sufficiently alleged a violation of the ICFA under Illinois law.

### b. Basis for ICFA Claim

Defendants argue that the ICFA does not allow recovery for a violation of the Illinois Interest Act. Defendants contend that the ICFA prescribes numerous statutes that if violated give rise to a ICFA claim; the absence of the Illinois Interest Act from the delineated violations prohibits the application of the ICFA. Despite the Defendants' protestations concerning the absence of the Illinois Interest Act from the list of statutes qualifying as a ICFA violation, Plaintiffs do not elicit the particular portion of the ICFA which relies on other violations to serve as a basis for an ICFA claim. Plaintiffs allege that the excessive interest and fees of the loans assessed by the Defendants in their loans was an unfair practice in violation of 815 ILCS 505/2 of the ICFA, which does not rely on a violation of another statute. Plaintiffs do not allege that a violation of the Illinois Interest Act represents a violation of 815 ILCS 505/2Z

of the ICFA, which provides a remedy under the ICFA for violations of other Illinois consumer statutes.

### c. Failure to Establish the Proximate Cause of their Injury

Defendants finally contend that Plaintiffs have failed to establish that their deception proximately caused Plaintiffs' injuries. To prevail under ICFA, a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury. *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002) ("Unlike an action brought by the Attorney General under [ICFA], which does not require that 'any person has in fact been misled, deceived or damaged[,]' . . . a private cause of action brought under [ICFA] requires proof of 'actual damage[]' . . . [and] proof that the damage occurred 'as a result of' the deceptive act or practice." (citations omitted)); *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514-15 (7th Cir. 2006); *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 861 (Ill. 2005) ("Proximate causation is an element of all private causes of action under the Act."). Therefore, Plaintiffs must allege that "but for" the Defendants' unfair conduct, they would not have been damaged.

Plaintiffs allege that the loans provided by the Defendants unlawfully charged finance charges, interest, and fees that were not permitted under Illinois law. As a result of the paying the charged interest of over 100%, as opposed to the Illinois cap of 9%, the Plaintiffs were damaged. Plaintiff sufficiently pled the proximate cause of their injury was the Defendants conduct. Defendants' motion to dismiss Plaintiffs' ICFA claim is denied.

### 3. Failure of Complaint to Allege Liability of Defendants other than CashCall, Western Sky and Webb

Defendants argue that the limited scope of Plaintiffs' allegations do not support such a broad inclusion of all Webb Entities that were not alleged to be directly included in the loan transaction. To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555. Plaintiffs allege that they received loans from Western Sky, which was chartered under the laws of South Dakota at the behest of Payday Financial. Payday Financial, as the management entity, also caused the other Webb Entities to be chartered in South Dakota. Plaintiffs further specify that Webb owns and manages Payday Financial and "formulated, controlled, had the authority to control, or participated in acts and practices of the Webb Entities that constitute the common enterprise." Webb's reign over the Webb Entities are alleged to be part of a broader "internet lending business model." Plaintiffs have sufficiently established that Defendants are part of a common enterprise supervised and controlled by Webb. The validity of the interplay between all the Defendants and Webb's role in managing the Webb Entities is a fact question which we are not in a position to determine. Accordingly, Defendants' motion to dismiss all Defendants other than Western Sky, CashCall and Webb, is denied.

## CONCLUSION

For the aforementioned reasons, the Court denies Defendants' motion to dismiss for failure to state a claim concerning Count I and Count III. The Court grants Defendants' motion to dismiss Count II.

_____
Charles P. Kocoras
United States District Judge

Dated: 2/3/2015